# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BRANDON RUSSELL and AALIYAH RUSSELL-MORGAN, ) ) ) | |
| Plaintiffs, ) ) | Case No. 15-cv-560 |
| v. ) ) | Judge Robert M. Dow, Jr. |
| XAVIER CHISM, COMMUNITY ) YOUTH DEVELOPMENT INSTITUTE, ) and the CITY OF CHICAGO, ) ) Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Brandon Russell and Aaliyah Russell-Morgan have sued Chicago Police Officer Xavier Chism, the Community Youth Development Institute ("CYDI"), and the City of Chicago for violations of state and federal law stemming from an incident on December 18, 2013. CYDI has moved for summary judgment [62] on the only claim against it, which alleges CYDI's liability for certain of Chism's actions under a *respondeat superior* theory. For the reasons set forth below, CYDI's motion [62] is granted in part and denied in part.

**I.     Background**

The Court takes the relevant facts from the parties' Local Rule 56.1 statements of undisputed material facts and the exhibits thereto.[1] The Court reviews each Local Rule 56.1 statement and disregards any argument, conclusion, or assertion unsupported by the evidence in the record. The Court also construes the facts in the light most favorable to the nonmoving party—here Plaintiffs.

---

[1] Those filings are: (1) CYDI's Local Rule 56.1 Declaration of Material Facts in Support of its Motion for Summary Judgment [63]; (2) Plaintiffs' Response to Defendants' Rule 56.1 Statement of Material Undisputed Facts [74]; (3) Plaintiffs' Statement of Additional Facts [75]; and (4) CYDI's Response to Plaintiffs' Local Rule 56.1 Declaration of Additional Material Facts [77].

Defendant CYDI is a private charter high school located at 7838 South Union Avenue in Chicago, Illinois, which the parties agree is a high-crime area. CYDI's student body is made up of at-risk youth, including those who have been involved in the criminal justice system, have perpetrated violence, have been the victims of violence, and/or are academically challenged. See [63] at ¶ 9; [74] at ¶ 9; see also [63-1] (A. Royster Dep.) at 49:8–17. To make sure that its students remain safe both inside and outside the school, CYDI has a security detail on its premises.

On December 18, 2013, Defendant Xavier Chism, an off-duty Chicago police officer, was working as a security guard at CYDI. As of that time, Chism had worked as a security guard for CYDI for three to four years. Chism has been employed as a Chicago police officer since September 2005. The parties agree that Chism's work for CYDI was governed by a one-page contract dated January 23, 2012. See [63] at ¶ 18; [74] at ¶ 18. In the contract, Chism's company—X-Factor—agreed to provide CYDI with "security services" five days a week for a minimum of four hours per day from January 2012 to January 2014. See [63-6] (contract).

Plaintiffs Brandon Russell and Aaliyah Russell-Morgan, both students at CYDI, were at school on December 18. At around 1:00 p.m., Aaliyah left the school building's first floor hallway through its front entrance. Chism observed this behavior and an altercation ensued outside of the school. Once Aaliyah's brother Brandon became aware of the situation, he ran out of the school and also was involved in an altercation with Chism. Plaintiffs do not dispute that "no one from CYDI was directly involved in the physical altercations between Chism and Plaintiffs." See [74] at ¶ 31. Both Plaintiffs were arrested and pled guilty to misdemeanor charges for resisting arrest.

Plaintiffs brought suit on January 20, 2015, naming Chism, "unknown officers," CYDI, and the City of Chicago (collectively, "Defendants"). See [1]. The original complaint contained four counts based on the December 18, 2013 altercations: § 1983-based excessive force claims against Chism and the unknown officers (Counts I and II), a sexual-orientation-based equal protection claim against all Defendants (Count III), and a § 1983 claim against CYDI for having a custom, policy, or practice that allows unlawful searches and seizures of students (Count IV). See generally *id*. After the close of discovery, Plaintiffs moved for leave to file an amended complaint, and after full briefing, Plaintiffs' motion was granted in part and denied in part. See [42], [45], [46], [49], [51], [52]. Plaintiffs' amended complaint contains four counts: a § 1983 excessive force claim against Chism for his actions against both Plaintiffs (Count I), a battery claim against Chism for his actions against Aaliyah only (Count II), a general *respondeat superior* claim against CYDI (Count III), and an indemnification claim against the City (Count IV). See [53]. Count III incorporates only the general allegations of the complaint (and not those contained in Counts I and II), and it further alleges that CYDI had a duty to provide a safe learning environment to Plaintiffs; it breached that duty when it permitted Chism, "one of its 'servants,'" to "batter" Aaliyah; and it caused Aaliyah damages when Chism's "willful and wanton" conduct led to Aaliyah's arrest. Count III further alleges that Chism "was acting in the scope of his duty as a security guard for [CYDI] for at least part of his tortious conduct." See *id*. at ¶¶ 46–50. As relevant here, in their prayer for relief, Plaintiffs request that CYDI be required to indemnify Chism and they seek punitive damages from the school. CYDI now moves for summary judgment. See [62].

## II. Summary Judgment Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). Rule 56 makes clear that whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. *Id*. In determining whether summary judgment is appropriate, the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor (here, Plaintiffs). *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532 (7th Cir. 2013) (citation omitted). Rule 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party would bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, the moving party may meet its burden by pointing out to the court that "there is an absence of evidence to support the nonmoving party's case." *Id*. at 324.

To avoid summary judgment, the nonmoving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted). For this reason, the Seventh Circuit has called summary judgment the "put up or shut up" moment in a lawsuit—"when a party must show what evidence it has that would convince a trier of fact to accept its version of events." See *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007). In other

4

words, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. 252.

**III. Analysis**

CYDI argues that it is entitled to summary judgment on Count III for the following reasons: (1) CYDI is not vicariously liable for Chism's conduct underlying Plaintiffs' state law battery claim because Chism was neither an employee nor an agent of CYDI; (2) Plaintiffs cannot sustain a *respondeat superior* claim against CYDI based on Plaintiffs' § 1983 excessive force claim against Chism because Plaintiffs fail to show that a CYDI policy or custom caused the alleged constitutional violation; (3) Plaintiffs have failed to elicit evidence to support a negligence claim against CYDI in the event that Count III—with its allegations concerning a duty—intends to bring such a claim; (4) Count III is untimely because it does not relate back to the original complaint; and (5) CYDI is entitled to summary judgment on the amended complaint's requests (i) that it indemnify Chism and (ii) for punitive damages. See [64]. In their response brief, Plaintiffs clarify that they intend to hold CYDI vicariously liable for Chism's battery of Aaliyah. Plaintiffs confirm that they do not seek to impose *respondeat superior* liability on CYDI on their § 1983 claim[2] and that they are not asserting a negligence claim against CYDI. See [76] at 2–5.

---

[2] In any event, the Court agrees with CYDI that Seventh Circuit precedent requires a showing that a policy, practice, or custom of CYDI caused the Plaintiffs' alleged Fourth Amendment violation. See *Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982) ("a private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights"); see also *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 664 (7th Cir. 2016) (*Monell* principles apply to private corporation that provides medical care services to prison inmates; plaintiff must thus show entity's policy,

5

## A. Relation Back

The Court first addresses the parties' arguments about the timeliness of Count III. Federal Rule of Civil Procedure 15(c) allows amendment to a pleading that would otherwise be time-barred when the amendment relates back to a timely filed original pleading. The parties do not dispute that a two-year statute of limitations applies to Illinois personal-injury claims (735 ILCS § 5/13–202), that Plaintiffs' original complaint was timely filed, or that Plaintiffs' motion for leave to amend and amended complaint were filed outside of this two-year period. The only issue is whether Count III relates back to the original complaint.

As a preliminary matter, CYDI opposed Plaintiffs' motion for leave to amend their complaint in part on the ground that the amended complaint advanced "an *entirely new* theory of recovery against CYDI." See [45] at 2 (emphasis in original), 6 ("[t]he causes of action against CYDI in the original complaint are completely different"). CYDI, however, chose to focus its opposition on arguments that (1) Plaintiffs' new claim against it was contradicted by evidence developed in discovery regarding Chism's employment status and (2) it would be prejudiced by the amendment. See *id*. at 3–6. The Court already considered and ruled on the propriety of Plaintiffs' amendments. See [52]. Now, through its answer to the amended complaint and motion for summary judgment, CYDI argues that the *respondeat superior* claim is untimely.

Even assuming that CYDI has not waived this issue, see *Pohl v. United Airlines, Inc.*, 213 F.3d 336, 340 (7th Cir. 2000) (arguments raised in the district court may be waived if not presented in a timely manner), its argument fails. An amended pleading relates back to the date of the original pleading where the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading.

---

practice, or custom caused constitutional violation); accord *Glisson v. Ind. Dep't of Corrs.*, 849 F.3d 372, 378−79 (7th Cir. 2017) (en banc); *Chatham v. Davis*, 839 F.3d 679, 685 (7th Cir. 2016); *Shields v. Ill. Dep't of Corrs.*, 746 F.3d 782, 796 (7th Cir. 2014).

See *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008) (citing Fed. R. Civ. P. 15(c)(1)(B)).[3] Put differently, "relation back is permitted under Rule 15(c)[(1)(B)] where an amended complaint asserts a new claim on the basis of the same core of facts, but involving a different substantive legal theory than that advanced in the original pleading." *Bularz v. Prudential Ins. Co. of Am.*, 93 F.3d 372, 379 (7th Cir. 1996) (citation omitted); see also *Mayle v. Felix*, 545 U.S. 644, 659 (2005) (an amended complaint relates back to an earlier complaint if both are based on the same "common 'core of operative facts' uniting the original and newly asserted claims") (citations omitted); *Arreola*, 546 F.3d at 796; *Newell v. Hanks*, 283 F.3d 827, 834 (7th Cir. 2002) (a sufficient factual nexus exists where the amended complaint asserts a newly specified claim "based on same core of facts advanced in the original"). CYDI only argues that Count III does not relate back to Plaintiffs' original complaint because it is "brand new" and "concern[s] a separate set of allegations." See [64] at 13. While it is true that Plaintiffs' original complaint pursued a gender-discrimination equal-protection claim against CYDI, it also attempted to hold CYDI liable for the December 18, 2013 physical altercations by way of a § 1983 claim. In Count III, Plaintiffs again seek to hold CYDI liable for the December 18 altercations, albeit under a different legal theory. The Court therefore concludes that the relation-back doctrine applies here because Count III arises out of the same core factual allegations contained in the original complaint's claims against CYDI—the December 18 altercations. See *Bularz*, 93 F.3d at 379 ("for relation back to apply, there is no additional requirement that the claim be based on an identical theory of recovery"). CYDI's reliance on *Henderson v. Vill. of Dixmoor*, 80 F.

---

[3] Illinois' relation-back provision is found in Section 2–616(b) of the Code of Civil Procedure (735 ILCS 5/2–616(b)) and sets forth the same test as Rule 15(c) in the federal context. See *White v. City of Chicago*, 631 F. Supp. 2d 1073, 1074 (N.D. Ill. 2009) (stating that Section 2–616(b) is Illinois' "relation-back provision that codifies essentially the same test as Rule 15(c) in the federal context"); see also 735 ILCS 5/2–616(b) (stating that an amended pleading will relate back to the original pleading if the claim in the "amended pleading grew out of the same transaction or occurrence set up in the original pleading").

Supp. 2d 939 (N.D. Ill. 2000), *aff'd sub nom. Henderson v. Bolanda*, 253 F.3d 928 (7th Cir. 2001), is inapposite because the district court there found that the *original* complaint was not timely filed, which concluded its relation-back analysis—an issue that does not exist here. *Id*. at 943.[4]

B. **Employee or Independent Contractor**

Generally, a person injured by the tortious act of another must seek relief from the person who caused the injury. *Lawlor v. N. Am. Corp. of Ill.*, 2012 IL 112530, ¶ 42. The doctrine of *respondeat superior*, which provides that a principal may be liable for the tortious actions of its agent even if the principal itself does not engage in any conduct in relation to the plaintiff, is an exception to this general rule. See *id*. *Respondeat superior*, however, typically cannot be used to impose vicarious liability on a "principal" for the tortious acts of its independent contractor. *Id.*; see also *Carney v. Union Pac. R.R. Co.*, 2016 IL 118984, ¶ 32 ("Because the hiring entity has no control over the details and methods of the independent contractor's work, it is not in a good position to prevent negligent performance, and liability therefor should not attach."). Here, CYDI argues that Chism was an independent contractor, not any employee or agent, and therefore it cannot be held liable for Chism's alleged battery. See [64] at 4.

The parties do not dispute that CYDI classified Chism as an independent contractor or that Chism considered himself a contractor,[5] but this is not dispositive. "Instead, in determining whether an alleged principal can be held vicariously liable to an injured third party, Illinois

---

[4] Moreover, on appeal, the Seventh Circuit acknowledged that the plaintiff's amended complaint was based on the same conduct as the original complaint. *Henderson*, 253 F.3d at 932.

[5] Throughout their response to CYDI's Local Rule 56.1 Statement of Facts, Plaintiffs dispute CYDI's characterization of Chism as an independent contractor, citing as support three very brief excerpts from Chism's deposition regarding certain aspects of his relationship with CYDI. See [74] at ¶¶ 12, 14, 16, 23–26. For purposes of CYDI's motion, the Court does not consider Plaintiffs' cited evidence to dispute the fact that CYDI considered Chism to be an independent contractor and that Chism considered himself to be the same. The Court addresses the specifics of the relationship between CYDI and Chism, including the details highlighted by Plaintiffs in their response to CYDI's statements of facts, in its analysis.

8

courts look at the actual practice followed by the parties." *Dixon v. MB Real Estate Servs., LLC*, 2016 IL App (1st) 152329-U, ¶ 15 (citations omitted). Whether a person is an employee or an independent contractor generally presents a question of fact, but this question may be decided as a matter of law when the relationship is so clear as to be indisputable. *Doe v. Brouillette*, 389 Ill. App. 3d 595, 606 (1st Dist. 2009). Although there is no precise formula, the analysis turns primarily on the level of control that the putative agent retains over the performance of his assigned work. *Horwitz v. Holabird & Root*, 212 Ill. 2d 1, 13 (2004). In a principal-agent relationship, the principal retains the right to control the manner and method in which the work is carried out by the agent. *Uesco Indus., Inc. v. Poolman of Wisc., Inc.*, 2013 IL App (1st) 112566, ¶ 61. By contrast, "[a]n independent contractor is one who undertakes to produce a given result but in the actual execution of the work is not under the orders or control of the person for whom he does the work but may use his own discretion in things not specified * * * [and] without his being subject to the orders [of the person for whom the work is done] in respect to the details of the work." *Horwitz*, 212 Ill. 2d at 13 (quoting *Hartley v. Red Ball Transit Co.*, 344 Ill. 534, 539 (1931)). Other pertinent factors include "(1) the question of hiring; (2) the right to discharge; (3) the manner of direction of the servant; (4) the right to terminate the relationship; and (5) the character of the supervision of the work done." *Lawlor*, 2012 IL 112530, ¶ 44; see also *Doe*, 389 Ill. App. 3d at 606 (including "the method of payment; whether taxes are deducted from the payment; the level of skill required to perform the work; and the furnishing of the necessary tools, materials, or equipment"). Plaintiffs ultimately bear the burden of demonstrating that Chism was the agent of CYDI.

CYDI focuses on evidence tending to support its view that Chism was an independent contractor at the time of the incident. For example, the parties to the security services contract

were CYDI and a company called X-Factor. See [74] at ¶ 18; [63-6] (contract). CYDI's principal testified that he considered the school's security personnel contractors; Chism testified that he was an independent contractor. See [63-1] (A. Royster Dep.) at 57:1–10, 79:21–24; [63-3] (X. Chism Dep.) at 89:2–13. Chism testified that he did not receive W-2s, but instead received 1099s for his work. See [63] at ¶ 22; [74] at ¶ 22. Also, in performing his work for CYDI, Chism relied on his specialized training and experience as a Chicago police officer.

Although these factors weigh in favor of CYDI on this issue, the remaining factors are either disputed or tend to support a finding that Chism was a CYDI employee. For example, Plaintiffs claim that CYDI dictated Chism's work schedule. See [75] at ¶¶ 4, 8. CYDI acknowledges that it determined how many security personnel to have on hand, and its principal testified that he "make[s] decisions based on how we should staff our security for that set time." [63-1] (A. Royster Dep.) at 58:6−7; see also [77] at ¶ 8; [63-3] (X. Chism Dep.) at 25:19−26:9 ("I wouldn't know [if the school staff needed me to work] until they told me."). CYDI argues that its practice of telling Chism when to report for duty is "immaterial" to the question of whether it had the right to control Chism's work because "those who hire independent contractors routinely tell them when they are needed on the job." See [78] at 3. But Illinois courts have included similar evidence in their employee/independent-contractor analyses. See, *e.g.*, *Dixon*, 2016 IL App (1st) 152329-U, ¶ 17 (considering whether park management company or security company had control over assigning guards to work and where they guards were positioned on duty).

Plaintiffs also assert that CYDI exerted control over Chism by dictating his duties. See [75] at ¶¶ 1, 2. CYDI does not dispute Chism's testimony that his duties were "whatever the school asked me to do" and that Chism was tasked with "clearing hallways, sending kids to class,

and providing security" for the school's front door. See [75] at ¶ 2; [77] at ¶ 2. CYDI does dispute that any work instructions or assignments were relayed directly to Chism; instead, CYDI submits that such items were relayed through X-Factor. In fact, CYDI relies heavily on the presence of X-Factor to argue that it did not control Chism. But the Court is not persuaded that the mere presence of X-Factor in the relationship between Chism and CYDI is conclusive on the record before it. For example, Chism testified that X-Factor was "my company" that he "founded or developed or created" for the purpose of doing off-duty activities for CYDI. See [63] at ¶ 24; [63-3] (X. Chism Dep.) at 89:14–22. Aside from the X-Factor/CYDI contract, the summary judgment record does not contain any other documents (tax records, payroll records, written communications, policies, etc.) that explicate X-Factor's role. All that the record shows is that Chism said he had a company and that CYDI entered into a contract with that company.

Plaintiffs also argue that CYDI's security guards were "controlled" by CYDI's disciplinary policy. See [75] at ¶ 9. CYDI counters that the policy applies only to the students, but in doing so points to testimony that could be construed to imply that the security guards were expected to follow CYDI policy in imposing discipline. See [63-1] (A. Royster Dep.) at 65:12–17 ("Q. . . . If a student misbehaves and a security guard sees that, is there something that a security guard is supposed to do? A. Yeah, our discipline policy is for the school and so that's what we follow."). Although there is no dispute that Chism received 1099s, Plaintiffs argue that CYDI directly paid Chism for his work, while CYDI argues that it paid X-Factor. See [77] at ¶¶ 5–7. Chism's deposition testimony on this point was equivocal:

> Q: Do you know if the school paid your company or you when you provided security services?
> A: Yes, they did.
> Q: Which one?
> A: At the time I think it was the company. I'm not sure. Sometimes they paid me also.

[63-3] (X. Chism Dep.) at 98:15–20; see [77] at ¶ 7.  Neither party has submitted Chism's pay stubs or tax forms to support its contentions.  Finally, CYDI argues that the contract between X-Factor and CYDI did not indicate that Chism was an employee.  In fact, the contract is completely silent about the nature of the relationship between the two parties.

Viewing the evidence in the light most favorable to Plaintiffs at this stage, these uncertainties preclude summary judgment on this issue. Because the test is fact-specific and involves many factors, the Court cannot conclude on the record before it that the relationship between CYDI and X-Factor/Chism is so clear as to be indisputable.  Indeed, courts have come to opposite conclusions in analogous cases involving security guards.  For example, in *Amigo's Inn, Inc. v. License Appeal Comm'n of City of Chicago*, 354 Ill. App. 3d 959 (1st Dist. 2004), the Illinois Appellate Court reversed a state commission's finding that a security guard was an agent of the bar at which he provided security.  There, the court noted the following testimonial evidence:  the security company gave guards their assignments (the bar did not play any role in this process); the guards took direction from the tavern manager; the tavern made payments to the security company instead of individual guards; and the tavern did not provide any training, instruction, or uniforms.  Taken as a whole, the court determined that the security guard was an independent contractor of the bar.  *Id*. at 967; see also *Dixon*, 2016 IL App (1st) 152329-U, ¶¶ 17–20 (summary judgment was appropriate on *respondeat superior* claim where evidence set forth a "classic independent contractor situation" because it demonstrated that the park management company provided "exceptionally limited macro-level oversight in its role of managing the entire property" and "[a]ll micro-level management, supervision, and employee control [was] vested in" the security guard company).

By contrast, in *Boyd v. Venticinque*, 1996 WL 238802 (N.D. Ill. May 7, 1996), the court found triable issues of fact as to the level of control Walgreen's maintained over a security guard. The summary judgment evidence showed that the store would assign the guard's hours and store postings and Walgreen's managers would direct the guard to do specific security tasks. On the other hand, Walgreen's did not pay the guard directly or provide benefits, nor did it provide the guard with tools. On balance, the court concluded that the plaintiff had provided sufficient evidence to raise a genuine issue of material fact as to whether the security guard was an employee or independent contractor. *Id*. at *2−*3; see also *Downey v. R.W. Briscoe & Assocs. Inc.*, 2012 WL 4176853, at *7 (N.D. Ill. Sept. 18, 2012) (in hostile work environment claim against facility at which security guard worked, concluding that factual disputes, particularly those relevant to the level of control that facility exercised over guard, precluded summary judgment); *Harper v. Wilson*, 302 F. Supp. 2d 873, 878–80 (N.D. Ill. 2004) (using a similar "economic reality test" in a Fair Labor Standards Act case, finding that a security guard was an employee of security company, instead of an independent contractor, where the company assigned tasks to the guard, had full control over every task assigned, and could fire her, among other things).

Here, too, there "is conflicting evidence" and "more than one inference can be drawn from the facts." *Boyd*, 1996 WL 238802, at *2 (citation omitted). Accordingly, "the determination of whether [Chism] is an employee or independent contractor for purposes of *respondeat superior* is * * * a question of fact to be decided by the trier of fact." *Id*.

C. **Indemnification & Punitive Damages**

Finally, CYDI argues that Plaintiffs' requests for (i) CYDI's indemnification of Chism and (ii) punitive damages against CYDI fail as a matter of law. Plaintiffs' response fails to make

mention of their request for CYDI's indemnification of Chism. It is not the duty of the court to make parties' arguments for them. See *Tyler v. Runyon*, 70 F.3d 458, 466 (7th Cir. 1995). Further, a party opposing summary judgment waives claims to which it fails to respond on summary judgment. *Palmer v. Marion County*, 327 F.3d 588, 597−98 (7th Cir. 2003). In any event, the Court agrees with CYDI that Plaintiffs' request for CYDI's indemnification of Chism is inappropriate. Plaintiffs have not provided the Court with any allegations, authority, or other support whatsoever in connection with their request for CYDI to indemnify another defendant in this case. The amended complaint cites to 745 ILCS 10/9-102, but by its terms, that statutory provision only applies to "local public entities." Plaintiffs make no claim that CYDI is a local public entity, and in fact, they have admitted that CYDI is a private charter school, independent from Chicago Public Schools. See [74] at ¶ 9. Accordingly, Plaintiffs' request for CYDI's indemnification of Chism fails.

In Illinois, punitive damages "may be awarded when torts are committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others[.]" *McCoy v. Iberdrola Renewables, Inc.*, 2013 WL 4027045, at *5 (N.D. Ill. Aug. 7, 2013) (quoting *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 186 (1978)). If the liability of a corporation is premised upon a theory of *respondeat superior*, imposition of punitive damage is "narrowly circumscribed." *Kennan v. Checker Taxi Co.*, 250 Ill. App. 3d 155, 160–61 (1st Dist. 1993). Complicity on the part of the principal is required. In *Mattyasovszky v. West Towns Bus Co.*, the Illinois Supreme Court adopted the position of the Restatement (Second) of Agency § 217C (1958) as to when punitive damages are proper against a corporate defendant on a theory of *respondeat superior*: (i) if the defendant authorized the doing and the manner of the employee's conduct, (ii) if the

employee was unfit and the defendant was reckless in employing him, (iii) if the employee was a manager acting in the scope of his employment, or (iv) if the defendant or a managerial agent of it ratified or approved the act. 61 Ill. 2d 31, 36−37 (1975); see also *McCoy*, 2013 WL 4027045, at *5; *Twardy v. Nw. Airlines, Inc.*, 2001 WL 199567, at *5 (N.D. Ill. Feb. 28, 2001).

Plaintiffs appear to argue that CYDI approved of Chism's actions by "'s[eeing] nothing wrong' with its security guard man handling a minor student and kicking another student's teeth out while handcuffed." See [76] at 7. Plaintiffs' only support for this argument is their fact statement that CYDI's principal, Aaron Royster, "found no issue with the way Chism handled the Plaintiffs." See [75] at ¶ 10 (citing to A. Royster Dep. at 9−14). CYDI vehemently denies this statement, [77] at ¶ 10, arguing that it is not supported by the cited deposition testimony. The Court agrees. In particular, the cited pages of Mr. Royster's deposition regard his professional background, not the December 18, 2013 incident or his opinions on it—let alone his approval of Chism's actions. In any event, the Court also has examined the record with respect to CYDI's conduct after the altercations, as a corporate defendant can ratify or approve of misconduct after it has occurred. *McCoy*, 2013 WL 4027045, at *6 (citation omitted). It appears that Chism did not return to work at CYDI following the incident, and the record does not reflect any evidence of ratification by CYDI after Chism's alleged misconduct. Further, Plaintiffs do not assert that CYDI authorized Chism to take the actions he took, that Chism was a manager, or that Chism was unfit for the position he held. Having concluded that Plaintiffs' arguments in favor of punitive damages are unsupported by the record, the Court declines to permit this issue to be presented to a jury.[6]

---

[6] Plaintiffs make the additional argument that a "jury could very well punish CYDI for failing to provide a safe environment for its students." Not only is this assertion outside of the considerations as to when punitive damages are proper against a corporate defendant on a theory of *respondeat superior*, it also is not grounded in the specific claim Plaintiffs have asserted against CYDI: vicarious liability for Chism's

## IV. Conclusion

For the reasons stated above, the Court grants in part and denies in part Defendant CYDI's motion for summary judgment [62]. The Court grants CYDI's motion to the extent that Count III asserts a claim (1) based on Plaintiffs' § 1983 excessive force claim against Chism or (2) for negligence against CYDI. The Court also strikes Plaintiffs' demands for indemnification and punitive damages against CYDI. The Court denies the motion in all other respects. This case is set for further status on September 7, 2017 at 9:00 a.m.

Dated: August 14, 2017

Robert M. Dow, Jr.
United States District Judge

---

battery of Aaliyah. Instead, this particular argument sounds in direct negligence against CYDI, a claim that Plaintiffs specifically have conceded that they do not assert here. See [76] at 5 ("Plaintiff [sic] brings no negligent hiring or negligent retention claim against CYDI.").